**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kim Morris, | No. CIV 03-2572-PHX-SMM |
| Plaintiff, | **MEMORANDUM OF DECISION AND ORDER** |
| vs. | |
| Terros, Inc., | |
| Defendant. | |

Pending before the Court is Defendant's Motion for Summary Judgment. (Dkt. 33.) After careful consideration of the parties' written arguments, the relevant case law, and the record as a whole, the Court now issues the following ruling.[1]

## **BACKGROUND**

This case involves one claim of discriminatory retaliation pursuant to the Americans with Disabilities Act (the "ADA") and one claim of retaliation pursuant to the Arizona

---

[1] The parties have had the opportunity to submit evidence and briefing, and the Court would not find oral argument helpful in resolving this matter. Accordingly, the Court finds the pending motions for summary judgment suitable for decision without oral argument. See LRCiv 56.2; Local Rules of Civil Procedure ("LRCiv") of the United States District Court for the District of Arizona 7.2(f); Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp., 933 F.2d 724, 728-29 (9th Cir. 1991) ("When a party has an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice" when oral arguments are not held on motions for summary judgment.).

1  Employment Protection Act (the "EPA").  Plaintiff Kim Morris ("Plaintiff") alleges that her
2  former employer, Terros, Inc. ("Defendant"), "terminated her in retaliation for" requesting
3  a reasonable accommodation under the ADA.  (Dkt. 1 at ¶¶15-20.)  In the alternative,
4  Plaintiff claims that Defendant terminated her because she "complained to [Defendant] about
5  the company's unlawful conduct," in violation of the EPA.  (Id. at ¶¶21-23.)

6  Unless otherwise noted, the following facts are undisputed.[2]  The Defendant is a not-
7  for-profit community-based organization that has provided behavioral health, prevention,
8  education, and treatment services in the Phoenix area for over thirty years.  (Dkt. 34 at ¶1.)
9  Plaintiff was employed by Defendant as a Clinician from January 2003 until September 9,
10 2003.  (Id. at ¶2.)

**A.     Facts Relevant to Plaintiff's Medical Condition**

12  Plaintiff suffers from "active depression as a result of brain injury."  (Id. at ¶13.)
13 Three months before filing this lawsuit, Plaintiff represented to the Equal Employment
14 Opportunity Commission that her mental condition limits her activities because it causes her
15 to have "problems listening, thinking, concentrating, problems with organization and keeping
16 to a strict schedule."  (Id., Ex. H at 1.)   In addition, Plaintiff represented that her mental
17 condition affects her major life activity because she "has no social life," "is a single parent
18 and all she does is work and take[] care of her daughter."  (Id. at ¶17.)  She also stated that
19 her doctor has suggested part-time work for her mental condition, but she "cannot afford that
20 – so [she tries] to take a little time off periodically."  (Id. at ¶16.)

21  In her deposition in the present case, Plaintiff stated that her condition was limited to
22 depression and that it caused difficulty sleeping and coping with stress.  (Id. at 18.)  Plaintiff
23 explained that she has trouble falling asleep and  wakes up off and on throughout the night,
24 although she is generally able to go to work the following day.  (Id.)

25 / / /

---

[2] The Court made this determination only after reviewing the evidence and arguments submitted in each of the parties' Separate Statements of Facts.  See dkts. 34, 37.

- 2 -

1  **B.    Facts Relevant to Plaintiff's EPA Retaliation Claim**

2  In or about May 2003, Defendant was preparing for a Commission of Accreditation
3  of Rehabilitation Facilities ("CARF") survey.  (Id. at ¶27.)  CARF is a non-profit
4  organization that reviews and grants accreditation in the human services field upon the
5  request of a facility or program.  (Id. at ¶25.)  The process begins with a self-evaluation,
6  indicating that the organization has implemented and used the CARF standards for at least
7  six months before the survey.  (Id.)  After the organization submits a self-evaluation and pays
8  a fee, the CARF team conducts the survey and determines the organization's conformance
9  with all applicable standards through the observation of services, interviews, and
10 documentation review.  (Id.)  CARF then reviews the survey findings and renders one of the
11 following accreditation decisions: (i) three-year accreditation; (ii) one-year accreditation; (iii)
12 provisional accreditation; or (iv) non-accreditation.  (Id.)

13 Plaintiff claims that, during the CARF review process, her supervisor, Carol Young,
14 told her to falsify client records.  (Id. at ¶27.)  Plaintiff further asserts that she refused to
15 comply with Ms. Young's directive to falsify client records in May 2003 and Ms. Young
16 subsequently "made [her] job really difficult."  (Id.)

17 The CARF accreditation was approved on June 30, 2003, without submission of any
18 of the false documents Ms. Young requested from Plaintiff.  (Id. at ¶28.)  Defendant received
19 the maximum three-year accreditation from CARF.  (Id.)

20 On or about July 21, 2003, nearly two months after she refused to falsify client
21 records, Plaintiff received a favorable performance evaluation and was hired on as permanent
22 staff, which included a pay increase.  (Id. at ¶29.)  Both of these positive actions were
23 implemented by Plaintiff's supervisor, Ms. Young.  (Id. at ¶30.)

24 **C.    Facts Relevant to Plaintiff's ADA Claim**

25 On or about August 25, 2003, Ms. Young told Plaintiff that some money was missing
26 from "petty cash."  (Dkt. 34 at ¶4.)  When Plaintiff asked what to do about it, Ms. Young
27 responded, "don't worry about it, just fix it . . . ."  (Id., Ex. C.)  The following week,
28

1  September 1, 2003, through September 5, 2003, Plaintiff was absent from work.[3]  (Dkt. 34,
2  Ex. C at 1.)

3      On Monday, September 8, 2005, Plaintiff "[c]alled in sick again to [Ms. Young] and
4  asked about extended leave possibilities for one more week."  (Id.)  Plaintiff did not explain
5  why she needed "extended leave possibilities."  (Id.)  Later that afternoon, Cheri Ingallina,
6  Defendant's Human Resources Manager, called Plaintiff at home, told her there was a serious
7  problem with missing petty cash and the improper use of Defendant's Costco card.  Ms.
8  Ingallina asked Plaintiff to come in to the office to discuss both issues.  (Id. at ¶5.)
9  Following the receipt of Ms. Ingallina's phone call, Plaintiff left two messages for Ms.
10 Young "asking what was going on with the issues raised by [Ms. Ingallina]."  (Id. at ¶6, Ex.
11 C at 1.)  In the second message, Plaintiff stated that she "had something to disclose to [Ms.
12 Young] relating to [her] recent absences from work."  (Id.)

13     The next day, on September 9, 2005 at 9:30 a.m., Ms. Young returned Plaintiff's
14 telephone calls about the petty cash and Costco card issues.  (Id. at ¶7, Ex. C at 1.)  Before
15 addressing the petty cash and Costco issues, Plaintiff immediately informed Ms. Young of
16 her medical disability and stated that she needed "a bit more additional time off to deal with
17 recent problems relating to the disability."  (Id. , Ex. C at 1.)  It is undisputed that this is the
18 first time Plaintiff had informed anyone at Terros (other than her subordinates) about her
19 disability.  (Id. at ¶ 11, Ex. H at 3, 5.)  Aside from this request for more time off to deal with
20 problems relating to her disability, Plaintiff had never asked Defendant for an
21 accommodation, nor has she asked her current employer for an accommodation as a result
22 of her medical condition.  (Id. at ¶19, Ex. H at 3.)

23     Ms. Young responded that Plaintiff needed to come to a meeting the next morning
24 with Ms. Ingallina and Sherry Henson to discuss the situation with the missing petty cash and
25 the Costco card.  (Id. at ¶7, Ex. C at 1.)  Ms. Young informed Plaintiff that if she did not

---

28  [3] September 1st was a legal holiday and Plaintiff called in sick from September 2nd through September 5th.  (Dkt. 34, Ex. C at 1.)

- 4 -

1  attend the meeting, she would have no choice but to fire her. (Id.) Plaintiff responded that
2  she would not attend the meeting due to "disability-related" issues. (Id., Ex. C at 1-2.) At
3  7:00 p.m. that same day, Plaintiff returned to work and cleared out her office. (Id. at 2.)

4  On September 10, 2003, following the submission of her resignation letter, Plaintiff's
5  employment was terminated. (Id. at ¶8, Exs. C, E.)

6  On September 23, 2003, Plaintiff filed a Charge with the EEOC, alleging
7  discrimination on the basis of disability and retaliation. (Id. at ¶9, Ex. F.) Specifically,
8  Plaintiff alleged that, during her September 9, 2003 conversation with Ms. Young, she stated
9  that she needed time off for disability-related issues but Defendant terminated her
10  employment based on her failure to attend a meeting the following day. (Id.)

11  The EEOC never asked Defendant to provide a position statement. On September 29,
12  2003, the EEOC issued a Notice of Right to Sue letter. (Id. at ¶10, Ex. G.)

13  Plaintiff filed this lawsuit on December 24, 2003. (Dkt. 1.) She alleges that her
14  termination was discriminatory in violation of the ADA and retaliatory in violation of
15  Arizona's EPA because Defendant discharged her (i) because she requested a reasonable
16  accommodation and (ii) for complaining to Defendant about what she believed to be
17  "unlawful conduct," i.e., the request to falsify records in preparation for the CARF review.
18  (Dkts. 1, 16.)

19  **STANDARD OF REVIEW**

20  A court must grant summary judgment if the pleadings and supporting documents,
21  viewed in the light most favorable to the nonmoving party, "show that there is no genuine
22  issue as to any material fact and that the moving party is entitled to judgment as a matter of
23  law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);
24  Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law
25  determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248
26  (1986); see also Jesinger, 24 F.3d at 1130. Thus, mere allegations of a factual dispute
27  between the parties will not defeat an otherwise proper motion for summary judgment.
28  "Only disputes over facts that might affect the outcome of the suit under the governing law

1 will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

The movant on a summary judgment motion bears the initial burden of providing a legal basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If the moving party meets its burden, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); see Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). All inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party, Eastman Kodak Co. v. Image Tech'l Servs., Inc., 504 U.S. 451, 456 (1992), but inferences must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party. Celotex, 477 U.S. at 322. Moreover, inferences cannot be created by pointing to "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Rather, deference to the nonmoving party has limits: (i) a plaintiff cannot rest on allegations in his pleadings to overcome a motion for summary judgment (Brinson, 53 F.3d at 1049); and (ii)self-serving affidavits do not establish a genuine issue of material fact if they fail to state facts based on personal knowledge or are too conclusory (Rodriguez v. Airborne Express, 265 F.3d 890, 902 (9th Cir. 2001)).

## **DISCUSSION**

### **I.  Count One: Discrimination Under the ADA**

Defendant argues that summary judgment should be granted on Plaintiff's ADA discrimination claim because (i) Plaintiff cannot state a prima facie case and (ii) Defendant terminated Plaintiff for legitimate non-discriminatory reasons and Plaintiff has failed to produce any evidence that Defendant's reason was a pretext for a discriminatory motive.

1  (Dkt. 33 at 5-10.)  The Court rejects the first argument, but agrees with Defendant that
2  Plaintiff has not produced any evidence to demonstrate pretext.

3  Under the ADA, it is unlawful for an employer to discriminate against an employee
4  based on the employee's disability.  Discrimination can also occur when an employer fails
5  to make reasonable accommodations for an employee's disability.  See McGary v. City of
6  Portland, 386 F.3d 1259, 1265-66 (9th Cir. 2004).  To establish a prima facie case of
7  discrimination under the ADA, Plaintiff must demonstrate: (1) she is "disabled" within the
8  meaning of the ADA; (2) she is qualified to perform the essential functions of her job with
9  a reasonable accommodation; and (3) she suffered an adverse employment action because
10 of her disability.  Allen v. Pacific Bell, 348 F.3d 1113, 1114 (9th Cir. 2003) (per curiam).
11 Once the plaintiff establishes a prima facie case, the employer bears the burden of production
12 to show "legitimate reasons for the adverse employment action."  Brooks v. City of San
13 Mateo, 229 F.3d 917, 928 (9th Cir. 2000).  If the employer carries this burden, plaintiff must
14 demonstrate a genuine issue of material fact as to whether the reason advanced by the
15 employer was a pretext in order to proceed beyond the summary judgment stage.  Id.

16 **A.    Discrimination Under the ADA**

17 **1.    Plaintiff Has Presented Evidence Of A Prima Facie Case of Discrimination**
18 **a. Genuine Issue of Fact as to Disability**

19 The ADA defines "disability" in part as "a physical or mental impairment that
20 substantially limits one or more of the major life activities of such individual." 42 U.S.C. §
21 12102(2)(A).  In enacting the ADA, Congress chose to protect individuals who have mental
22 impairments as well as those with physical impairments.  See Criado v. IBM Corp., 145 F.3d
23 437, 443 (1st Cir. 1998); Holihan v. Lucky Stores, Inc., 87 F.3d 362, 365 n. 3 (9th Cir. 1996);
24 29 C.F.R. § 1630.2(h)(2) (listing "emotional or mental illness" as an impairment).  To be
25 disabled under this definition, therefore, Plaintiff must show an impairment that affects one
26 or more major life activities.  See 42 U.S.C. § 12112(a).

27 Defendant argues that Plaintiff cannot establish she is disabled within the meaning of
28 the ADA because her depression "does not substantially limit one or more of [her] major life

- 7 -

1  activities." (Dkt. 33 at 5-7.)  Specifically, Defendant argues that Plaintiff's "inability to get
2  a good night's sleep" is insufficient to demonstrate a substantial limitation on a major life
3  activity as a matter of law.  (Id. at 7.)  The Court disagrees.
4       In Head v. Glacier Northwest, Inc., 413 F.3d 1053 (9th Cir. 2006), the Ninth Circuit
5  held that "[s]leeping is a major life activity."  Id. at 1060; McAlindin v. County of San
6  Diego, 192 F.3d 1226, 1234 (9th Cir. 1999) ("Common sense suggests that sleeping is also
7  a major activity in the lives of most people. A person who gets the recommended eight hours
8  of sleep a day spends one-third of each 24-hour day sleeping.  Moreover, sleeping is
9  indispensable to the maintenance of personal health. Therefore, we join the Second and Tenth
10 Circuits in holding that sleeping is a major life activity.").  In the present case, Plaintiff
11 testified that her condition is limited to depression and causes difficulty sleeping. See Dkt.
12 34 at ¶18. On facts similar to the assertions Plaintiff makes here, the Head Court found that
13 a genuine issue of material fact existed as to whether an employee with sleep problems was
14 substantially limited in the major life activity of sleeping.  Head, 413 F.3d at 1060
15 (declaration alleging difficulty sleeping at night, with some improvement when using sleep
16 medication, suffices to raise a genuine issue of material fact regarding the impairment of a
17 major life activity ).  Thus, the Court rejects Defendant's assertion that Plaintiff is not
18 disabled because she cannot satisfy the "substantially limits" prong of the disability inquiry.

19                     **b.  Genuine Issue of Fact as to Discrimination**

20      Defendant argues that Plaintiff has not presented any evidence – aside from her
21 subjective belief – that she was discriminated against because of her alleged disability, the
22 third element necessary to establish a prima facie case of discrimination.  (Dkt. 33 at 8.)
23 Plaintiff contends she has met this burden by showing that her employment was terminated
24 after she disclosed her disability to Ms. Young.  Defendant responds that the undisputed
25 sequence of events demonstrates Plaintiff was not fired as a result of her disability because
26 Defendant "raised the issue of the inappropriate use of petty cash . . . before Plaintiff told Ms.
27 Young that she had an alleged disability and before she asked for additional time off." (Dkt.
28

- 8 -

33 at 8, original emphasis). Although this is a close case, the Court finds that Plaintiff has presented just enough evidence to establish a prima facie case of discrimination.

Although Defendant disputes that there was a causal link between Plaintiff's termination and the disclosure of her disability and request for an accommodation, cases in the Ninth Circuit uniformly hold that temporal proximity between an employer's knowledge of protected activity, such as requesting an accommodation, and an adverse employment action is sufficient evidence of causality to establish a prima facie case if the temporal proximity is very close. See Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987) (holding that sufficient evidence of causation existed where adverse employment action occurred less than three months after the protected activity); Miller v. Fairchild Indus., Inc., 797 F.2d 727, 731-32 (9th Cir. 1986) (concluding that there was adequate evidence of a causal link where the retaliatory action occurred less than two months after the protected activity). In the present case, given that Plaintiff disclosed her disability and requested an accommodation from Ms. Young on September 9, 2003, and she was terminated the next day, and given that on summary judgment all inferences from the evidence must be construed in favor of Plaintiff, the Court finds that Plaintiff has made out a prima facie case of discrimination. (Dkts. 34, Ex. D at 62-63; 36 at 6.) Although the evidence is not strong, Plaintiff has produced sufficient evidence to establish a genuine issue of material fact that she was terminated because she requested an accommodation, and thus was discriminated against because of her disability.

**2.   Defendant Has Shown A NonDiscriminatory Reason for Termination**

Defendant, in turn, has produced admissible evidence sufficient for a reasonable jury to find the existence of a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff: her unauthorized use of petty cash to buy personal items at Costco and her refusal to participate in the investigation of the missing petty cash on September 10, 2003 (see dkts. 34 at ¶¶8-9, 21; 37 at ¶12, Exs. A at ¶3, F at 1.) See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000) ("This burden is one of production, not persuasion; it 'can involve no credibility assessment.'") (citation omitted). Thus, the burden shifts back

1 to Plaintiff to show evidence of pretext. See Collings v. Longview Fibre Co., 63 F.3d 828, 833 (9th Cir.1995) ("Unless [plaintiff] can show that [defendant's] explanation for [plaintiff's] discharge was a pretext for disability discrimination, . . . [she has] presented no triable issue under the ADA.").

### 3. There is No Genuine Issue of Material Fact as to Pretext

In order to show pretext, Plaintiff must demonstrate "that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that [she] has been the victim of intentional discrimination. [She] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Snead v. Metropolitan Property & Casualty Ins. Co., 237 F.3d 1080, 1093-94 (9th Cir. 2001) (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981)). Plaintiff has failed to produce such evidence.

Plaintiff's challenge to Defendant's non-discriminatory justification for terminating her rests upon circumstantial evidence: most notably the temporal proximity between Plaintiff's disclosure of her disability and the date she was terminated, Ms. Young's "lack of concern about the missing petty cash, and the fact that no negative action was taken against Plaintiff regarding the missing petty cash when Plaintiff returned from vacation." (Dkt. 36 at 5.) The relevance of these facts, however, is belied by uncontroverted evidence indicating that Plaintiff was informed about the petty cash allegations on August 25, 2003, more than two weeks before she disclosed her disability and requested additional time off as an accommodation. Likewise, rather than demonstrating pretext, Ms. Young's statement on August 25, 2003, that Plaintiff should not worry about the missing petty cash but should "fix it," demonstrates Defendant's good faith belief that Plaintiff was in fact the person who took the petty cash. Finally, that Plaintiff was not terminated immediately after returning from vacation does not raise a reasonable inference of pretext, but instead shows that Defendant was still investigating the petty cash incident on September 8th and 9th, when Plaintiff was asked to participate in the investigation.

Plaintiff also argues that she has shown "pretext" because Defendant's claim that she was involved in the theft of petty cash is simply a conclusion without any basis and Defendant failed to investigate the allegations. Plaintiff's argument does not amount to a demonstration of pretext because it is simply her sense of what happened. Subjective beliefs do not prove pretext. Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 661-64 (9th Cir. 2002) (at pretext stage of analysis, "an employee's own statement that he was performing at a level equal to that of other employees is not enough to raise a genuine issue of material fact"); see also Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983) ("mere assertions . . . [of] discriminatory motive and intent . . . were inadequate, without substantial factual evidence, to raise an issue precluding summary judgment"). No evidence supports Plaintiff's assertion that Defendant did not become "aware of information indicating that Plaintiff had inappropriately used petty cash to purchase goods for herself from Costco," before she was terminated. See Dkt. 34, Ex. A at ¶2. Moreover, there is no dispute that Plaintiff refused to participate in the investigation (see id.)[4] and she has presented no evidence to show that Defendant did not investigate the petty cash allegations. Finally, no evidence shows that Plaintiff did not take the petty cash; indeed, Plaintiff admits having the key to the petty cash and merely avers that she did not purchase anything at Costco using Defendant's *credit card*. See Dkt. 37, Ex. 1 at ¶¶1-2, 7.

Even assuming Defendant misinterpreted the petty cash incident, no reasonable jury could find that Defendant used the petty cash allegations as a pretext to retaliate against Plaintiff because she disclosed her disability and requested an accommodation. The evidence

---

[4] Plaintiff tries to "dispute" this issue by asserting that she "did not refuse to participate in the investigation of the alleged missing petty cash, she simply requested an additional week off due to her disability." See Dkt. 37 at ¶12. However, Plaintiff offers no evidence to support this conclusory assertion. She does not state that she offered to discuss the issue on the telephone or in personal on a different day or at a different time the following day. Indeed, the only evidence on this issue demonstrates that, when Ms. Young asked her to participate in the investigation at a meeting the following day, Plaintiff responded that "she was not able to do that" because she had a therapist appointment the next day. See Dkt. 34, Ex. D at 52:18-53:6. At her deposition, when asked whether she could have attended a meeting after the therapist appointment, Plaintiff responded, "I don't know." Id. at 53:7-19.

1 shows without dispute that Defendant was legitimately concerned about the missing petty
2 cash long before Plaintiff first informed Defendant (through Ms. Young) of her disability and
3 requested an accommodation.  Indeed, it is uncontested that the petty cash allegations were
4 first raised on August 25, 2003, nearly two weeks before Plaintiff disclosed her disability and
5 requested a week off to take care of it on September 9, 2003. See Dkt. 34 at ¶¶4, 11, Ex. C
6 at 1; Ex. D at 45:1-46:14, Ex. H at 3, 5.  Similarly, Plaintiff has admitted that, *prior to*
7 *disclosing her disability*, she was "getting very upset because [she] thought [she] was going
8 to be accused of something" with respect to the missing petty cash. See Dkt. 34, Ex. D at
9 45:18-20.  Thus, it is uncontested that, before she disclosed her disability and requested an
10 accommodation, Plaintiff understood that her job was in jeopardy. Id.

11 Under Ninth Circuit law, "[c]ircumstantial evidence of pretext must be specific and
12 substantial in order to survive summary judgment."  Bergene v. Salt River Agric.
13 Improvement & Power Dist., 272 F.3d 1136, 1142 (9th Cir. 2001). Plaintiff's evidence is
14 neither and, as a result, "she has not shown that 'either . . . a discriminatory reason more
15 likely motivated [Defendant] or . . . that [Defendant's] proffered explanation is unworthy of
16 credence.'"  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002)
17 (citation omitted). Considering all of Plaintiff's evidence together, the Court concludes that
18 Plaintiff has not created a genuine issue of material fact that the reasons Defendant offers for
19 her termination are pretextual. As a result, the Court will grant Defendant's motion for
20 summary judgment on Plaintiff's ADA claim.

21 **B.     Count II: Retaliation Under the Arizona EPA**

22 Pursuant to Arizona's EPA, an employee has a wrongful termination claim against the
23 employer if the employer terminates the employment relationship of an employee in
24 retaliation for:

25 > The disclosure by the employee . . . that [he] has information or
> a reasonable belief that the employer . . . has violated . . . the
26 > statutes of this state to either the employer or a representative of
> the employer who the employee reasonably believes is in a
27 > managerial or supervisory position and has the authority to
> investigate the information provided by the employee and to
28

- 12 -

>take action to prevent further violations of the . . . statutes of this state . . . .

A.R.S.§ 23-1501(3)(c)(ii).

When a plaintiff lacks direct evidence of retaliation, she may establish a prima facie case of retaliatory discharge by showing: "(1) that [she] engaged in protected activity, (2) that [she] suffered an adverse employment action, and (3) that there is a causal link between the two." Hernandez v. Spacelabs Medical Inc., 343 F.3d 1107, 1113 (9th Cir. 2003). Once a plaintiff establishes a prima facie case, the burden shifts to the employer-defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. Fonseca v. Sysco Food Services of Arizona, Inc., 374 F.3d 840, 849 (9th Cir. 2004). If the employer proffers a legitimate reason, the burden shifts back to the plaintiff to show that the reason given is a pretext for another motive which is discriminatory. Id.

Defendant moves for summary judgment on count II of Plaintiff's Complaint on the grounds that (i) Plaintiff cannot show protected activity; (2) Plaintiff cannot prove a causal connection between her complaint and termination of her employment; and (3) Plaintiff has no evidence that Defendant's legitimate nondiscriminatory reason for terminating her employment was pretextual. The Court finds that Plaintiff has failed to demonstrate a prima facie case of retaliatory discharge because she cannot demonstrate causation. Further, even assuming, *arguendo*, a prima facie case has been shown, the Court will grant summary judgment in Defendant's favor because Plaintiff has presented no evidence that Defendant's legitimate nondiscriminatory reason for terminating her employment was pretextual.

### **1.   Plaintiff Has Failed To Establish A Prima Facie Case**

To succeed on her "retaliation for whistleblowing" claim under the Arizona EPA, Plaintiff must prove that she disclosed in a reasonable manner to Defendant or one of its managerial employees that Plaintiff reasonably believed Defendant or its employee has violated, is violating, or will violate the Constitution of Arizona or its statutes. A.R.S. §23-1501(3)(c)(ii). Plaintiff must also prove that Defendant terminated her employment in retaliation for this disclosure. Id. §23-1501(3)(c). Furthermore, Plaintiff must prove that she

- 13 -

reported a violation of Arizona's Constitution or statutes, not federal law. <u>Galati v. Am. W. Airlines, Inc.</u>, 69 P.3d 1011, 1014 (Ariz. App. 2003).

### a. **Plaintiff's Evidence Raises a Triable Issue of Fact as to Protected Activity**

Plaintiff claims that Defendant violated Arizona's EPA by firing her in retaliation for her refusal to comply with Ms. Young's request that she "falsify" patient records during the CARF accreditation process. (Dkts. 1 at ¶¶21-23; 36 at 7-9.) The Court notes at the outset that, in her conversation with Ms. Young, Plaintiff failed to specify which Arizona statute the request to "falsify" records violated. On summary judgment, however, the Court must view the evidence and draw inferences from underlying facts in a light most favorable to the non-moving party. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) (per curiam). The Court therefore recognizes that while Plaintiff did not cite to statutory authority in her communications with Ms. Young, Plaintiff reasonably believed that state laws were being violated and conveyed that belief to Ms. Young. Thus, viewing inferences from the evidence in her favor, the Court finds that Plaintiff's has raised a triable issue of fact with respect to whether she engaged in "protected activity" under A.R.S. §23- 1501(3)(c)(ii).

Plaintiff's retaliation claim is based on A.R.S. 13-2311, which provides as follows:

> A. Notwithstanding any provision of the law to the contrary, in any matter related to the business conducted by any department or agency of this state or any political subdivision thereof, any person who, pursuant to a scheme or artifice to defraud or deceive, knowingly falsifies, conceals or covers up a material fact by any trick, scheme or device or makes or uses any false writing or document knowing such writing or document contains any false, fictitious or fraudulent statement or entry is guilty of a class 5 felony.

A.R.S. 13-2311(A). <u>See</u> Dkt. 36 at 8. Defendant argues that Plaintiff has "failed to demonstrate, or even allege, that [Defendant] participated in any fraudulent plan or scheme or that its alleged actions were in any way motivated by an intention to defraud." (Dkt. 38 at 9.) Based on its review of the record, the Court disagrees.

"[T]he elements of A.R.S. § 13-2311 require that a [person or entity] knowingly falsify or conceal a material fact or use a false writing pursuant to a plan, trick or device to defraud another." <u>State v. Sommer</u>, 745 P.2d 203, 205 (1987). Once again, viewing

1  inferences from the evidence in the light most favorable to Plaintiff, the Court finds that Ms.
2  Young's directive to falsify records could have been viewed by Plaintiff as a scheme or plan
3  to defraud CARF by falsifying records.

### b. No Causal Connection Exists

Defendant further argues that no causal connection exists between Plaintiff's protected activity and her termination, and therefore Plaintiff fails to demonstrate a prima facie case for retaliatory discharge. Defendant points to the missing petty cash and Plaintiff's failure to participate in the investigation as the events that precipitated Plaintiff's termination, rather than her supposed whistleblowing. (Dkt. 33 at 11.) The Court agrees.

Plaintiff has presented evidence that she refused to comply with Ms. Young's request to falsify records in May 2003, and that Ms. Young subsequently "made [her] job really difficult." (Dkt. 34 at ¶27.) Plaintiff contends a causal link exists between her complaint to Ms. Young and her subsequent termination in September 2003 because she was terminated only five months after she refused to comply with Ms. Young's request to falsify records.

In the present case, the Court finds no evidence, direct or circumstantial, from which a jury might infer causation. To the contrary, the evidence suggests no causality at all. In the time period between Plaintiff's complaint and Defendant's decision to terminate her, Defendant provided her with a favorable performance evaluation and hired her on as permanent staff. Moreover, Plaintiff's promotion to permanent staff included a pay raise, and both positive actions were implemented by Ms. Young. (Dkt. 34 at ¶¶29-30.) While courts may infer causation based on the "proximity in time between the protected action and the allegedly retaliatory employment decision," Ray v. Henderson, 217 F.3d 1234, 1244 (9th Cir. 2000) (quoting Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir.1987)), such an inference is not possible in this case because close to five months lapsed between the date of Plaintiff's complaint and Defendant's adverse decision and, in the interim time period, Plaintiff received a promotion and a pay raise by the same person she now claims retaliated against her. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam) (noting that a court may not infer causation from temporal proximity unless the time between

- 15 -

1 an employer's knowledge of protected activity and an adverse employment action is "very 2 close" and citing cases for the proposition that a three-month and four-month time lapse is 3 insufficient to infer causation). Due to the remoteness in time between her complaint to Ms. 4 Young, Plaintiff has failed to raise a genuine issue of material fact regarding causation.

### 2. **Plaintiff Has Failed To Establish Pretext**

Even assuming, *arguendo*, that Plaintiff could establish a prima facie case of retaliatory discharge, the Court will grant summary judgment in favor of Defendant because Plaintiff has failed to raise a genuine issue of material fact as to pretext. As shown above, Plaintiff has failed to present any direct evidence of pretext, and the indirect evidence is neither specific nor substantial. Bergene, 272 F.3d at 1142. Thus, Plaintiff has failed to show that she was terminated in retaliation for refusing to falsify records or that Defendant's explanation of why she was terminated is unworthy. See supra at 10-12.

### CONCLUSION

Having carefully examined each of Plaintiff's claims, the Court concludes that Defendant has met its summary judgement burden by pointing to specific portions of the pleadings, depositions, and other evidence that show the absence of a genuine issue of material fact as to each claim. Plaintiff has attempted to establish a genuine issue of material fact, but she has failed to produce any actual evidence on critical factual issues, as is required to create a genuine issue of material fact on her discrimination and retaliation claims. See Celotex, 477 U.S. at 323-24 (a principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims").

Accordingly,

**IT IS HEREBY ORDERED GRANTING** Defendant's Motion for Summary Judgment. (Dkt. 33.)

**IT IS FURTHER ORDERED DENYING AS MOOT** Defendant's Request for Status of Motion pursuant to Local Rule 7.2(1). (Dkt. 39.)

///

///

1  **IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment
2 accordingly.
3  DATED this 28th day of July, 2006.

Stephen M. McNamee
United States District Judge